RUTHERFORD, executor, *vs.* HOBBS.

[WARNER, Chief Justice, being engaged in presiding over the senate, organized as a court of impeachment, did not sit in this case.]

1. A demise in ejectment which describes the lessor of the nominal plaintiff as a mere individual or as heir at law of a named decedent, may be amended so as to describe him as executor of the same decedent, by virtue of §3487 of the Code. Such amendment will relate back to the introduction of the demise into the suit, and no title by prescription will mature in the opposite party by reason of delay to amend.

2. The possession of land by the holder of a bond for titles, with some of the purchase money unpaid, is permissive, and the same does not become adverse to the maker of the bond though the holder has conveyed the premises by deed to an innocent purchaser from himself, yielded possession to such purchaser, and afterwards resumed and held it under a reconveyance by deed from his own vendee. A second vendee by deed from the holder of the bond cannot, in a contest with the maker of the bond, tack to his own possession any part of that of the holder of the bond, the same not being adverse; nor can he tack to his own the possession of the first vendee by deed, because the two adverse possessions having been separated by an intervening permissive possession, the continuity of adverse holding was interrupted.

Ejectment. Amendment. Administrators and executors. Prescription. Before Judge CRISP. Dougherty Superior Court. April Term, 1879.

The jury returned a verdict for the defendant. A motion for new trial was made upon numerous grounds, but the case turned upon the rulings of the court below on the amendments changing the character in which the plaintiff

sued, and the effect of such change on the prescriptive title set up by defendant. The court held that the prescription of defendant ran against the amended action until the date of the amendment. This necessitated a verdict for the defendant.

Any further report, in view of the opinion, is unnecessary.

JOHN RUTHERFORD ; S. HALL ; STROZER & SMITH, for plaintiff in error.

D. A. VASON ; R. F. LYON ; WARREN & HOBBS, for defendant.

BLECKLEY, Justice.

The action was commenced on May 17th, 1869. The declaration contained but one demise, which was from Williams Rutherford, heir at law of Samuel Rutherford. The trial was had in April, 1879, at which time two other demises were found attached to the declaration, and purporting to be an amendment to the same. They were not marked as filed, nor was there any order of court allowing them as an amendment, or granting leave to amend. They, however, bore an acknowledgment of service, signed by the defendant, and dated October 29th, 1870. The court, on motion of the defendant's counsel, struck these two demises, holding that they had not become a part of the declaration, and that the declaration was unamended. This ruling we leave to stand, because what afterwards transpired rendered it harmless to the plaintiff under the peculiar facts of his case, when he shall get the benefit in full of what ensued. Whether in itself the ruling was correct is not easy of decision, and is not decided. During the progress of the trial, two amendments to the original declaration were allowed and made, on the plaintiff's motion ; the first striking out the descriptive terms, "heir at law," and the second inserting in their place, "as executor of Samuel

Rutherford." As thus amended, the sole lessor of the nominal plaintiff was Williams Rutherford as executor of Samuel Rutherford; and with the declaration in this shape the trial progressed and was concluded. The court, however, ruled that the statute of prescription ran against the executor, as such, up to the making of the amendment; and this view of the law was decisive against his right to recover.

1. The case of *Tift vs. Towns*, page 237, is, in principle, an authority in point, both as to the right to amend, and the effect of the amendment upon the element of prescription. The second chapter of the third part of the Code treats of amendments; and the first article of the chapter is headed "General Principles." One of the sections, 3487, in this article is in the following words: "In an action by or against an executor, administrator, or other representative, the declaration may be amended by striking out the representative character of such plaintiff or defendant. And in an action by or against an individual, the pleadings may be amended by inserting his representative character." The real plaintiff in an action of ejectment is the alleged lessor. John Doe is a mere figment of the law's imagination, with no more existence as a real suitor than Mercury has as a real god. Only during high poetic transport does the law regard him as a true, objective personality. Though born of the muse, he is dry and commonplace enough to be engaged in the extensive real estate business which he pretends to carry on, but in very truth, he is a phantom—a legal will-o'-the-wisp, an ingenious conceit of the law in its rapt poetic moods. He is not one of the plaintiffs which the sedate section of the Code we have recited speaks of. Williams Rutherford was the plaintiff in this action from the beginning. He sued as an individual, and in no representative capacity. That he described himself as an heir at law makes no difference— the suit was his individual action, and the descriptive terms which he chose to apply to himself did not make it other-

wise. The case, then, was precisely that in which the section says the representative character may be inserted; and the insertion made by amendment at the trial was precisely that which the section provides for. One of the learned counsel for the defendant, Judge Lyon, submitted to our consideration a written argument, from which I make the following extract: " section 3487 does not apply to actions of ejectment; it was not enacted to affect, or in aid of them, in any respect. It was enacted to remedy evils, allow corrections of mistakes, irregularities, etc., in other actions; for before that clause of the Code, the right to make such changes in respect to parties in other actions was, to say the least, very doubtful, but in actions of ejectment it was always allowable; new lessors could always be introduced by way of amendment into actions of ejectment at any stage of the cause; and one suing as heir at law, or in his own right (and the words heir at law were mere surplusage), depends for his right of recovery on one title, and as executor, on another. In the one case, the title is by descent, and in the other by purchase. In the one case, the recovery is for one use or purpose, and in the other for another; in the one case it is assets, and in the other not. In the one case (and it is almost always so), the two rights or titles are represented by wholly different persons. Here it merely happened that Williams Rutherford was an heir at law and the executor also. Had Peter Plainstains been the heir at law and John Styles the executor, the right to amend would have been the same; the change in the suit would have been the same; but no such change could have been allowed under this section of the Code, but it would have been allowed under the general law, and the statutory bar would have cut off the recovery under the last title presented." We have already called attention to the fact that section 3487 is in a part of the Code which treats of amendments generally, and is portion of an article which lays down " general principles." Further on is an article headed, "Particular Cases," and in neither of the two articles is

there any express mention of actions of ejectment. The section we are considering says: " In an action . . . the declaration may be amended . . . , and in an action . . . the pleadings may be amended." What authority is there for excluding from this phraseology actions of ejectment? The language is no less applicable to them than to other actions; and there is nothing in the nature of ejectment which renders such amendments as the section provides for, less appropriate to it than they are to an action of a different character. It is true, as Judge Lyon argues, that new lessors could always be introduced by way of amendment into actions of ejectment; but the learned counsel omits to state how this was done, and how it may still be done. When the object is to introduce a new lessor by amendment, the method usually pursued has been, and yet is, to add another demise. This is obviously a very different thing from correcting and perfecting a demise already laid. If the proper and only necessary person is in court and upon the record, but in a wrong character, why not alter the original demise under section 3487, instead of adding another? In this way the section can be applied to ejectment just as it is to other suits, and this very case demonstrates that the need for its application may arise, and become as urgent in ejectment as in debt, assumpsit, or trover. Thus far we are in full accord with the learned judge who presided at the trial; he permitted the amendment to be made in the manner contemplated by the section under discussion.

But in afterwards holding that the statute of prescription ran pending the action, the judge, as we think, departed from consistency. There was no new count, no new demise in the declaration. In some respects each separate count or demise is a distinct suit, and it is certainly so for the purpose of pleading to it the statute, or any other defense. But when an amendment is made which grasps the whole action, and embraces the sole party plaintiff, is it not obvious that it must blend with and merge in the original case,

merely changing without destroying it? The plaintiff here was the same natural person after the amendment as before, the premises the same, the eviction the same, and the count or demise the same. Changed it is true, and materially changed was the last; but while the original unity of case remains there is no passing from one identity to another. In but two possible ways could there be a new case generated by the amendment, and either of these would involve plurality; the new case must have existed with the old, in which event there were two at once, or it must have existed after the old, in which event the two were successive, with no interval between them. With but one declaration and one count in it, the actual or constructive existence of the two cases at once is out of the question; nobody can believe in it. The successive existence on the other hand, of two cases is, perhaps, conceivable, notwithstanding the unity of declaration and demise, but this conception is annihilated as soon as the mind reverts to the nature of an amendment. Amendment is always conservative, never destructive; at least this is so in the aim and purpose of the law which provides for it. The whole scheme of amendment to pleadings looks to upholding the action or defense in aid of which the amendment is authorized. It never was heard of that the making of a specific amendment pointed out in a statute would, *ipso facto*, terminate the pending suit, and inaugurate another. Wherever an amendment is needed, there is something defective in the instrument of pleading which stands in need of it. If making the alteration or supplying the deficiency in the prescribed way will not put an end to the case in all instances, why should it in any? What is there in a misdescription of the plaintiff, or in a deficient description of him or of his title, which renders it necessary, or even proper, that amending it should destroy the identity of the action, when various other amendments, equally material to a recovery, might be made without working any such result? Once settle that a given amendment to a declara-

tion can properly be made, that is, that it is both author-
ized and appropriate, and it follows logically that the
making of it tends to preserve and forward the action, and
not to overthrow or extinguish it. To that end was the
privilege of amending established. Amendment is com-
pletion of the incomplete or correction of the incorrect,
and as well might it be said that judicious additions to or
alterations of an edifice will cause it to fall, as that judicious
amendment to a declaration will destroy the case. And if
the suit is in legal identity the same suit after the amend-
ment as it was before, there would be and could be no run-
ning of the statute of prescription whilst it was pending,
the principle of unity comprehending both the sole plain-
tiff and his single and only cause of action. We think the
presiding judge was mistaken on this branch of the case,
and that for this reason there must be a new trial.

2. A very brief reference to certain facts in the evidence
will suffice to show that Hobbs, the defendant, could not
tack to his own possession that of Tompkins or that of Jones
in making out the prescriptive term of seven years prior
to the institution of the suit. Tompkins held by purchase
from Samuel Rutherford, the testator. He had from Ruth-
erford only a bond for titles, and a part of the purchase
money has not yet been paid. The bond, it seems, bears
date December 5th, 1860. Tompkins conveyed to Jones
by deed, dated October 10th, 1859. These dates are ap-
parently inconsistent, but that makes no difference in the
principle. Jones conveyed back to Tompkins by deed,
dated January 8th, 1864, and Tompkins conveyed to Hobbs,
the defendant, by deed, dated the 23d of the same January.
Now, relatively to Rutherford the possession of Tompkins
was permissive, and as he could not assert it to bar Ruther-
ford's executor, so neither can his vendee, Hobbs, assert it
for that purpose ; and though the possession of Jones was
adverse, its continuity was broken by the intervening per-
missive possession of Tompkins, creating a chasm between
the possession of Jones and that of Hobbs, and this want

of connection, or continuity, prevents it from being available for Hobbs.   The result is that Hobbs must rest wholly on his own possession, unaided by that of either of his predecessors, and it was of shorter duration than seven years when the action was brought.

Cited for the plaintiff: Amendment, Code, §§3479, 3487. Possession, 44 *Ga.*, 299; Code, §§2679, 2683; 15 *Ga.*, 194; Adams on Eject., 474, *n.;* 8 Cowen, 382; 3 John. Ch. R., 345.

For the defendant: Amendment, 18 *Ga.*, 399; 30 *Ib.*, 873; 39 *Ib.*, 439.   Possession, 47 *Ga.*, 302; 53 *Ib.*, 655; 31 *Ib.*, 637; 8 *Ib.*, 274 (7, 8, 9); 55 *Ib.*, 25 (3); 51 *Ib.*, 142 (2); 58 *Ib.*, 429, 430.

Judgment reversed.