HENRY HARNAGEL, Appellant, v. JOHN G. FETT, Appellee.

No. 41188.

OCTOBER 19, 1932.

REHEARING DENIED FEBRUARY 16, 1933.

Herminghausen & Herminghausen, for appellant.

J. R. Frailey and J. W. Napier, for appellee.

WAGNER, J.—The sole question for our determination is whether, under the facts as disclosed by the record, the plaintiff-Harnagel is entitled to impress in his favor a resulting trust upon the real estate in controversy, for the alleged reason that he paid a portion of the purchase price of the real estate, the title to which is held by the defendant. It therefore becomes necessary to refer to the evidence. In September, 1915, the plaintiff's son, Herbert, married the defendant's daughter, Etta. On July 26, 1919, during the land boom period, the defendant-Fett entered into a written contract with Raid, by the provisions of which the vendor-Raid, for the consideration of $17,400.00, to be paid on March 1st, 1920, agreed to sell and convey to the vendee-Fett the real estate herein involved, consisting of 116 acres. In September or October, 1919, there were negotiations for the transfer of the farm by Fett to his son-in-law and daughter. Fett told the children, in substance, that they could have the farm at the price which he had agreed to pay, and that he would leave $10,000 in it at 5% interest. This would necessitate their raising the balance, to wit, $7,400.00. The son-in-law began negotiations with a bank for a loan of $7,400.00. After talking with the officers of the bank, he reported to the plaintiff, his father, that he could get the money from the bank, and the father informed him that it was his belief that he could get a cheaper rate of interest somewhere else, and that he, the plaintiff, would look around for a loan for the son. As a result of the plaintiff's efforts in behalf of his son, a loan for $1,000.00 was negotiated by the son from plaintiff's father. The sole makers of the note for the $1,000.00 were Herbert and Etta Harnagel. The remainder, $6,400.00, was obtained by the plaintiff for the son from Faeth. The note for said amount was in form a joint and several promissory note, and was signed by Herbert Harnagel and his wife, and also by both the plaintiff and the defendant.

The evidence conclusively establishes the fact that, as among the plaintiff, defendant, and the children, Herbert and Etta, the children were the principals and the plaintiff and defendant were only sureties. Neither the plaintiff nor the defendant had any thought of borrowing money for themselves. The son testified:

"After I went to the West Point Bank I went to my father and

told him about I had been to the West Point Bank looking for the money, and told him I could. get it from them, and he said .he believed he could get a cheaper rate of interest somewhere else. He said he would look around for a loan *for me.* * * * I tried various places to get it and finally found I could get $6,400.00 from Mr. Faeth. Then there was another $1,000.00 I borrowed from my grandfather. * * * We [Herbert and Etta Harnagel] always expected to pay the $1,000.00, the $6,400.00 and the $10,000.00."

The plaintiff testified as follows:

"I told him [plaintiff's son] I believed I could get *him* a lower rate of interest some place else. I went to Adam Faeth and asked him about some money. He said he guessed he could let *Herbert* have it for 5½ per cent. He asked me what backing there would be and I told him that Herbert and Mr. Fett would sign the note. He then said he could raise the money if them two went on the note and I went on the note with them. * * * I told Herbert ·he could get the money there, but I said 'the old man wants me to sign the note.' "

The plaintiff further testified:

"They [the children] told me that Mr. Fett would turn this over with some $10,000.00 in it and they must raise $7,400.00. Herbert said he could get it at the bank. I asked him what rate. I told him to go a little slow, I thought I could get it cheaper."

It will be noted that the defendant also signed the $6,400.00 note, but there was no prearrangement between the children and the defendant that he was to sign a note for any portion of the $7,400.00, and he did not know that it had been represented to Faeth that he would sign the note, nor, prior to the time when the note was signed, that any of the interested parties expected him to sign the note. At the time when the note was signed by the plaintiff he asked the defendant to sign it, and relative to this transaction the defendant testified:

"That note was signed naturally speaking through my good will; in the first place I didn't intend to sign; I told them if they could go and raise the balance over $10,000.00 they could have the place, and Mr. Harnagel asked me if I would sign it too, and as it was my daughter I thought I would."

To further set out the testimony upon this question would unduly prolong this opinion. It is sufficient to say that the testimony quite conclusively shows that the plaintiff and the defendant were only sureties upon the $6,400.00 note.

In March, 1920, as a result of the transactions, the defendant received $7,400.00 from his son-in-law, and he paid $17,400.00 to Raid and received a deed for the farm, in which he is named as grantee. The defendant and his wife then executed unto the children, Herbert and Etta, a bond for a deed, obligating them to execute a deed for the premises, on condition that they (the children) should pay the sum of $10,000.00 on March 1st, 1925, with interest at 5% per annum, etc. The children continued to live on and operate the farm and pay interest upon the aforesaid obligations up to and including the 1st day of March, 1924. By that time, they had failed financially and paid no more interest upon their obligations. Sometime the latter part of February, 1925, the children, Herbert and Etta, being insolvent and unable to pay out on the farm transaction, met with the defendant and, by agreement, the bond for deed was canceled and they voluntarily removed from and surrendered the possession of the farm to the defendant.

About March 1st, 1925, the plaintiff and defendant paid the amount due upon the Faeth note, to wit, $6,720.00, each paying one half of said amount.

The grandfather, who was the payee of the $1,000.00 note, died, and although the plaintiff was under no obligation to pay the note, he voluntarily advanced $1,000.00, or the same was taken into consideration in paying him his share on distribution of the estate, and the plaintiff became the holder of the note.

It is the contention of the plaintiff that, under this record, he paid on the purchase price of the farm $4,360.00, and that he is entitled to impress a trust for the proportionate share of the purchase price so claimed to have been paid by him.

The question for our determination is: Has the plaintiff established a resulting trust in his favor for the sum of $4,360.00 or any portion thereof? We answer in the negative. The burden of proof is upon the one claiming a resulting trust, and in order to establish the same the evidence must be clear, explicit, decisive, satisfactory, convincing, and leave the existence of no essential element to conjecture or to remote and uncertain inference. See Cunningham v. Cunningham, 125 Iowa 681; In re Estate of Mahin, 161 Iowa 459;

Culp v. Price, 107 Iowa 133; Hyatt v. First National Bank of Williams, 193 Iowa 593. In the latter case, we said:

"Before such legal title can be overcome and ownership established in the plaintiff upon the theory of a resulting trust, the proof must be clear, certain, satisfactory, and practically overwhelming."

In Cotton v. Wood, 25 Iowa 43, this court declared:

"Where, upon the purchase of property, the consideration is paid by one, and the legal title conveyed to another, a resulting trust is thereby raised, and the person named in the deed will hold the property as trustee of the party paying the consideration."

This rule has been followed and elaborated in a long line of our cases, our last pronouncement being in Spring v. Spring, 210 Iowa 1124. It is this principle or rule upon which the plaintiff in the instant case relies for reversal. A resulting trust must arise, if at all, from the state of facts existing at the time the legal title to the property is acquired, and cannot arise from matters coming into existence afterwards; and the person claiming to be the *cestui que trust* must occupy such position *then* as will entitle him to be substituted for the grantee. See 39 Cyc. 128-129; Pomeroy's Equity Jurisprudence (3rd. Ed.), Vol. 3, p. 1992, Sec. 1037.

It is quite clear that the plaintiff has not established a resulting trust for the $1,000.00 borrowed by his son from the grandfather. The son, Herbert, procured this $1,000.00 from the grandfather on a note signed by himself and his wife, and the money so procured was then money belonging to and furnished by them. There can be no pretense of claim that said $1,000.00 was money belonging to, or furnished by the plaintiff. Therefore, the plaintiff's claim relative to the $1,000.00 must fail.

The plaintiff must also fail upon his claim relative to the sum of $3,360.00, being the amount paid by him in March, 1925, upon the Faeth note. As hereinbefore stated, the record conclusively shows that, as between the plaintiff on the one hand and the son and son's wife upon the other, the plaintiff was only a surety. The appellant, in his reply argument, makes the assertion that it was the understanding that Herbert and Etta Harnagel (the son and son's wife) should pay the note. It is quite clear from the record that when the $6,400 was obtained from Faeth, it was, at that time, money, the title to which was transferred by Faeth to the principal, and not to the

surety. The plaintiff-appellant had nothing to do with the transaction by which the defendant-Fett purchased from Raid and became the owner of the real estate; his only connection with the transaction was that of surety for his son and son's wife, to enable them to raise the money to purchase the real estate from Fett. The plaintiff has failed to establish a resulting trust for any portion of the $4,360.00, and the judgment of the trial court is hereby affirmed.— Affirmed.

STEVENS, C. J., and FAVILLE, DE GRAFF, and ALBERT, JJ., concur.